## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,               No. CR 14-2029 MV

vs.

WANDA COOPER,

        Defendant.

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

COMES NOW the Defendant Wanda Cooper – by and through her counsel of record Brian A. Pori, and pursuant to the Fourth Amendment of the United States Constitution and Rule 12(b)(3)[C] of the Federal Rules of Criminal Procedure – to respectfully submit this Motion to suppress all of the evidence which Drug Enforcement Administration Agents seized from her on May 20, 2014 as well as the custodial statements she made to DEA Agents following the seizure of the evidence.  Ms. Cooper  respectfully submits that DEA Agents seized the evidence without a warrant following an unlawful arrest which lacked probable cause and that DEA Agents exploited the illegal arrest by soliciting her incriminating statements.  In support of this Motion, counsel for Ms. Cooper states:

1.     Wanda Cooper has been charged in an Indictment, returned on June 11, 2014, with possessing more than fifty grams of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  (Doc. 10.)

2.     On the morning of May 20, 2014, DEA Special Agent Jarrell Perry boarded an eastbound Greyhound Bus in Albuquerque, New Mexico and confronted Ms. Cooper as she was seated on the bus.  (Doc. 1, Affidavit in Support of Criminal Complaint [hereafter "Affidavit"], ¶ 2.)

3.     Agent Perry stood in front of Ms. Cooper, blocked her egress from the bus, displayed his DEA Badge, identified himself as a police officer, and asked to speak with Ms. Cooper.   (Doc. 1, Affidavit, ¶ 2.)  Feeling she could not decline the request, Ms. Cooper agreed to speak with Agent Perry.

4.     Agent Perry asked Ms. Cooper to see her bus ticket.  In response, Ms. Cooper provided the bus ticket for her male traveling companion who, at the time, was in possession of Ms. Cooper's bus ticket.

5.     After Ms. Cooper gave Agent Perry her traveling companion's ticket, Agent Perry asked to see Ms. Cooper's identification.  In response, Ms. Cooper gave Agent Perry her California identification card.  (Doc. 1, Affidavit, ¶ 2.)

6.     Agent Perry then asked Ms. Cooper if he could search her.  Ms.

Cooper refused to give Agent Perry her consent.  (Doc. 1, Affidavit, ¶ 3.)

7.     Once Ms. Cooper refused to consent to a search, Agent Perry ordered her to exit the bus.

8.     As soon as Ms. Cooper stepped off of the bus, Agent Perry inexplicably handcuffed her and lifted her shirt.  After lifting Ms. Cooper's shirt, Agent Perry saw that Ms. Cooper was wearing a girdle.  (Doc. 1, Affidavit, ¶ 4.)

9.     Agent Perry then placed Ms. Cooper in the rear portion of a full sized sport utility vehicle which had a wire mess cage in the rear passenger compartment.  Ms. Cooper was confined in this cage (without any water or air conditioning) for more than an hour while Agent Perry attempted to conduct a further investigation of Ms. Cooper's traveling companion.

10.     After a considerable period of time, Agent Perry transported Ms. Cooper to the DEA Offices in Albuquerque, which is approximately seven miles away from the bus station.

11.     At the DEA Office, DEA Special Agent Julie Olmstead photographed Ms. Cooper then ordered Ms. Cooper to remove her shirt so that Agent Olmstead could take additional photographs.  Agent Olmstead then reached inside of Ms. Cooper's girdle and retrieved a clear plastic bag which allegedly contained approximately 400 grams of methamphetamine.  (Doc. 1, Affidavit, ¶ 5.)

12.     Shortly after Agent Olmstead seized the methamphetamine, DEA Task Force Officer Jonathan Walsh read Ms. Cooper her rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).  Ms. Cooper waived her rights and then admitted that she knew she was in possession of methamphetamine.  (Doc. 1, Affidavit, ¶ 6.)

13.     DEA Agents only discovered the methamphetamine in the waistband of Ms. Cooper's sweat pants after Agent Perry detained her without reasonable suspicion and arrested her without probable cause.  The alleged methamphetamine was subsequently seized without a warrant based on this unlawful arrest and, therefore, the methamphetamine seized must be suppressed.

14.     In addition, Ms. Cooper's custodial statements were the direct product of her illegal arrest and must also be suppressed because DEA Agents obtained the statements by exploiting the unlawful arrest.

15.     Assistant United States Attorney Paul Mysliwiec, counsel of record for the United States, has been informed of this Motion to Suppress Evidence and Mr. Mysliwiec represents that the Government opposes the Motion.

### *Memorandum in Support of Motion*

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const., Amend. IV. Searches without a warrant are presumptively unreasonable and the Government bears the burden of proving the reasonableness of a warrantless search. *United States v. Carhee,* 27 F.3d 1493, 1496, fn. 2 (10th Cir. 1994). Consequently, "whenever a defendant challenges a warrantless search or seizure, the Government carries the burden of justifying the agent's actions." *United States v. Finefrock,* 668 F.2d 1168, 1170 (10th Cir. 1982).

Ms. Cooper was detained without any reasonable suspicion and then arrested almost immediately after she refused her consent to a search and without probable cause. Therefore the Government bears the burden of proving that the detention and the arrest complied with the basic protections of the Fourth Amendment and that Ms. Cooper's incriminating statements were properly obtained without exploiting an illegal arrest which lacked probable cause. The Government cannot meet that demanding burden in this case.

## I.     The Evidence Was Seized After an Unlawful Arrest Which Lacked Probable Cause.

An individual is seized within the meaning of the Fourth Amendment when she is taken involuntarily to a police station. *Dunaway v. New York*, 442 U.S. 200, 207 (1979) [defendant in a robbery-murder investigation was arrested on an unsubstantiated tip which did not provide enough information to obtain an arrest warrant]. "Transportation to and investigative detention at the station house without probable cause or judicial authorization together violate the Fourth Amendment." *Hayes v. Florida,* 470 U.S. 811, 815 (1985) [investigation of Mr. Hayes and 30 to 40 other men led to Mr. Hayes' warrantless arrest for questioning], *citing Davis v. Mississippi,* 394 U.S. 721 (1969) [detention and arrest of African American young men for the purpose of collecting fingerprints].

"An officer has probable cause to arrest [an individual] if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested. *United States v. Muñoz-Nava,* 524 F.3d 1137, 1144 (10th Cir. 2008). Probable cause to arrest does not require facts which are sufficient to establish the accused's guilt beyond a reasonable doubt, but it "does require more than a mere suspicion." *Ibid* [probable

cause for arrest present based on fact that defendant was traveling with no luggage, a narcotics dog appeared to alert to something inside of the defendant's boots, the defendant's boots had an uncharacteristic bulge, the boots smelled of fresh glue and the defendant gave an unusual explanation for the excessive weight of the boots].  Although probable cause may properly be based on reasonable inferences which an officer may draw from all of the attendant facts and circumstances, it must nevertheless be based on something more compelling than an officer's "inchoate and un-particularized suspicion or 'hunch.'" *Terry v. Ohio,* 392 U.S. 1, 27 (1968)

Unlike the defendant in *Muñoz-Nava,* in this case there is an absolute dearth of information to support Ms. Cooper's arrest.  Ms. Cooper, an African-American female traveling on a Greyhound Bus, was confronted and ordered off the bus on the basis of nothing more than the fact that she had her traveling companion's ticket, there appeared to be a bulge in her waistband and she refused Agent Perry's request to consent to a search.[1]  Under these circumstances there was "no probable

---

[1]  Agent Perry had no prior acquaintance with Ms. Cooper which would enable him to know whether Ms. Cooper had an unusual physique or a medical condition or some other innocuous explanation for a bulging girdle.  Cf. *United States v. Wood,* 106 F.3d 942, 948 (10th Cir. 1997) [facts which describe "a very large category of presumably innocent travelers" do not provide reasonable suspicion to detain or arrest].  In addition, any exercise of a right to refuse consent cannot be the basis for reasonable suspicion or probable cause.. *United States v. Manuel,* 992 F.2d 272, 274 (10th Cir. 1993), citing *Florida v. Royer,* 460 U.S. 491 (1983).

cause to arrest, no consent to the journey to the police station and no judicial authorization for such a detention." *Hayes v. Florida, supra,* 470 U.S. at 814 (1985).

Illegally seized evidence is inadmissible at trial. *Davis v. Mississippi,* 394 U.S. 721, 724 (1969). The exclusionary rule was fashioned as a sanction to redress and deter overreaching governmental conduct prohibited by the Fourth Amendment. *Ibid.* Therefore, "all evidence obtained by searches and seizures in violation of the Constitution is . . . inadmissible." *Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

Ms. Cooper was taken off of a bus, handcuffed, placed in the rear cage of a police vehicle and left there for more than an hour before she was transported seven miles away to the offices of the DEA. During that entire period Agent Perry did not know if the "bulge" under Ms. Cooper's shirt was a money belt or a back brace or a diabetic insulin delivery device or simply a characteristic of Ms. Cooper's physique. Agent Perry made "no attempt . . . to employ procedures which might comply with the requirements of the Fourth Amendment." *Davis v. Mississippi, supra,* 394 U.S. at 728. Therefore, in light of these undisputed facts, the evidence seized from Ms. Cooper must be suppressed because it was only discovered after an illegal arrest which lacked any semblance of probable cause.

-8-

## II.    Ms. Cooper's Custodial Statements Were the Product of Her Illegal Arrest.

In *Brown v. Illinois,* 422 U.S. 590 (1975) the Supreme Court held that "[t]he exclusionary rule . . when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth." *Id.* at 601.  As a result, a statement which may have been made voluntarily under the Fifth Amendment may nonetheless still be suppressed if the statements "were obtained by exploitation of the illegality of the arrest." *Id.* at 600.  This is so because when "there is a close casual connection between the illegal seizure and the confession, not only is exclusion of evidence more likely to deter similar police misconduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts." *Dunaway v. New York, supra,* 442 U.S. at 218.

The *Brown* Court identified several factors to be considered in determining whether a defendant's confession was obtained by exploiting an illegal arrest, including: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances . . . and, particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois, supra,* 422 U.S. at 603-04, *see also United States v. Maez,* 872 F.2d 1444, 1457 (10ᵗʰ Cir. 1989).  Often, if there is no

probable cause for the arrest, the accused's custodial statements should be suppressed under the exclusionary rule as the "fruit of the poisonous tree." *New York v. Harris,* 495 U.S. 14 (1990).

Ms. Cooper's statements were only obtained by exploiting the circumstances surrounding her arrest without probable cause. There is no evidence of any other factors which purged the taint of Ms. Cooper's illegal arrest.

The incriminating statements were made shortly after the methamphetamine had been removed from Ms. Cooper's girdle. In the time between the discovery of the narcotics and Ms. Cooper's statements "there was no intervening event of significance whatsoever." *Brown v. Illinois, supra,* 422 U.S. at 604. Finally, "the arrest without probable cause in this case had a 'quality of purposefulness' in that it was an 'expedition for evidence' admittedly undertaken 'in the hope that something might turn up.'" *Dunaway v. New York, supra,* 442 U.S. at 218, *citing Brown v. Illinois, supra,* 422 U.S. at 605. Under the totality of these circumstances, the Government simply cannot sustain its burden of showing that Ms. Cooper's custodial statements are admissible because they were obtained after law enforcement officers  purged the taint of her unlawful arrest.

*Conclusion*

"The ultimate touchstone of the Fourth Amendment is 'reasonableness.'"

*Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)  The "long-prevailing standards"

of probable cause embody "the best compromise that has been found for

accommodating the often opposing interests in safeguarding citizens from rash

and unreasonable interferences with privacy and in seeking to give fair leeway for

enforcing the law in the community's protection."  *Dunaway v. New York, supra,*

442 U.S. at 209, citing *Brinegar v. United States,* 338 U.S. 160 (1949).  To

sanction investigatory seizures without probable cause "would subject unlimited

numbers of innocent persons to the harassment and ignominy incident to

involuntary detention.  Nothing is more clear than that the Fourth Amendment was

meant to prevent [such a] wholesale intrusion upon the personal security of our

citizenry."  *Ibid*.

Special Agent Jarrell Perry's actions in this case were unreasonable.

Although Agent Perry is an outstanding law enforcement officer with considerable

training, experience and success in the detection and interdiction of narcotics,

even he is not perfect and (like any human) on rare occasions he can make a

mistake.  Ms. Cooper contends that is the case here and that Agent Perry  arrested

her based on a "rash and unreasonable inference."

Agent Perry ordered Ms. Cooper off of a bus, handcuffed her, placed her in the back of a police car for more than an hour, and transported her to the DEA headquarters based on little more than an inchoate hunch that she had a bulging waist.  Clearly on such a paucity of evidence, Agent Perry's actions violated the Fourth Amendment.

Therefore, for all of the foregoing reasons, the Defendant Wanda Cooper respectfully requests that this Honorable Court suppress all of the evidence seized from her without a warrant on May 20, 2014 following an unlawful arrest which lacked probable cause.  In addition, Ms. Cooper respectfully requests that this Honorable Court  exclude the custodial statements she made to DEA Agent Jonathan Walsh following her unconstitutional arrest.

Respectfully Submitted,
/s/ *Brian Pori* – filed electronically 6/30/14
Brian A. Pori
Office of the Federal Public Defender
111 Lomas Blvd NW, Suite 501
Albuquerque, N.M. 87102-2373
(505) 346-2489 [telephone]
(505) 346-2494 [facsimile]

Counsel for Wanda Cooper

-12-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>30</u><sup>th</sup> day of June, 20<u>14</u>, I filed the

foregoing Motion to Suppress Evidence electronically through the CM/ECF

system, which caused a copy of the pleading to be served electronically on

opposing counsel of record addressed as follows:

Paul Mysliwiec, Esq.
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico 87103

<u>/s/ *Brian Pori* filed electronically 6/30/14</u>
Brian A. Pori